487 So.2d 1036 (1986)
GULF POWER COMPANY, Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Appellee.
No. 66632.
Supreme Court of Florida.
March 20, 1986.
Rehearing Denied May 29, 1986.
G. Edison Holland, Jr. of Beggs and Lane, Pensacola, for appellant.
William S. Bilenky, Gen. Counsel, and Paul Sexton, Associate Gen. Counsel, Florida Public Service Com'n, Tallahassee, for appellee.
Jack Shreve, Public Counsel and Stephen Fogel, Associate Public Counsel, Office of the Public Counsel, for Citizens of State of Fla., Intervenor.
McDONALD, Justice.
Gulf Power Company appeals from an adverse ruling by the Public Service Commission ordering Gulf to refund over $2,000,000 to its rate payers. The commission predicated the order on its findings that managerial imprudence caused Gulf to *1037 pay excessive fuel costs in the purchase of coal.
The issues presented are whether there is competent substantial evidence to support the commission's findings of managerial imprudence, whether the calculation for the amount of the refund is proper, and whether the refund order constitutes retroactive ratemaking and is therefore prohibited. We affirm the order of the commission.
In 1952 Gulf Power, Alabama Power Company, and Georgia Power Company contracted with Alabama By-Products Corporation to purchase coal removed from the Maxine Mine. A contract rewrite in 1954 extended the contract to 1974. Several agreements among the three purchasers allocated the output from Maxine Mine, and, under those agreements, Gulf took no coal from that mine from 1964-69, instead making excess cost payments to Alabama Power. In 1969 Gulf lost its alternate coal supplier and reactivated its Maxine Mine deliveries. ABC proposed extending the mining of Maxine in 1972, and Gulf agreed to extend its contract through 1977. This was a cost-plus type of contract. A subsequent amendment extended the contract through 1984, when the mine would be shut down. By 1978 Maxine coal was Gulf's highest cost fuel, and by 1980 the price Gulf paid for Maxine coal was the highest of comparable coals purchased by utilities throughout the country. In 1981 Gulf asked the PSC staff for a meeting to discuss an accounting mechanism to accrue the estimated cost of closing down and reclaiming Maxine Mine. The staff recommended that the issue be brought before the PSC which, after holding hearings, determined that Gulf had acted imprudently by renewing the contract and by failing to terminate its contract when prices rose to excessive levels.
Contrary to Gulf's contentions, the commission sought to evaluate Gulf's managerial decisions under the conditions and times they were made. Witnesses testified that these actions were imprudent, and this testimony was adequately predicated on pertinent factual data. Likewise, the method of determining the effects of these imprudent decisions on its rate payers was an acceptable method and with sufficient supporting data to sustain the amount ordered to be returned to the customers.
Nor do we find that the order constitutes prohibited retroactive ratemaking fuel adjustment. Fuel adjustment charges are authorized to compensate for utilities' fluctuating fuel expenses. The fuel adjustment proceeding is a continuous proceeding and operates to a utility's benefit by eliminating regulatory lag. This authorization to collect fuel costs close to the time they are incurred should not be used to divest the commission of the jurisdiction and power to review the prudence of these costs. The order was predicated on adjustments for 1980, 1981, and 1982. We find them to be permissible.
The order of the Public Service Commission is affirmed.
It is so ordered.
ADKINS, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
BOYD, C.J., dissents.